COLEMAN v KOOTSILLAS

Docket No. 105721. Argued December 9, 1997 (Calendar No. 1). Decided
    March 24, 1998.

Jimmie and Tammy Coleman brought an action in the Wayne Circuit
    Court against the Albright Construction Company, the owner of a
    garbage truck, Francis Kootsillas, the driver of the truck, and the
    city of Riverview, for injuries sustained by Jimmie in a city landfill
    when the Albright truck overturned and fell on his truck, pinning
    him inside. The plaintiffs alleged that the city was liable because it
    had allowed the road and surrounding areas in the landfill to
    become muddy and unmanageable, contributing to the accident.
    The Colemans agreed to a voluntary dismissal of the city, believing
    that no exception to governmental immunity applied. Thereafter
    Kootsillas filed a third-party complaint against the city, raising the
    same allegations as the Colemans. The court, John R. Kirwan, J.,
    granted the city's motion for summary disposition, finding that the
    city's landfill was not a proprietary function and, thus, it was
    immune from tort liability. The Court of Appeals, M. J. KELLY, P.J.,
    and D. R. FREEMAN, J. (SAWYER, J., dissenting), reversed, holding that
    the landfill was a proprietary activity in that it was conducted to
    produce a pecuniary profit and that its operation was not normally
    supported by taxes and fees (Docket No. 157069). The city appeals.

    In a unanimous opinion by Justice KELLY, the Supreme Court
    *held*:

    The operation of the landfill is a proprietary function, subjecting
    the city to liability.

    1. The fact that garbage collection and disposal is a governmen-
    tal function does not mean that a city cannot be held liable for its
    employees' tortious conduct. It may be liable if the activity is pro-
    prietary in nature. For an activity to be a proprietary function it
    must be conducted primarily for the purpose of producing a pecu-
    niary profit, and it cannot normally be supported by taxes and fees.

    2. In determining whether the agency's primary purpose is to
    produce a pecuniary profit, a court should consider whether a
    profit is actually generated and, if so, where the profit is deposited
    and how it is spent. In this case, it is clear that the primary purpose

of the landfill was to produce a pecuniary profit. Moreover, the profit generated was used to fund other city projects.

3. In determining whether an activity is one normally supported by taxes or fees, it is important to consider the type of activity. The operation of a municipal landfill, as in this case, that accepts garbage, not merely from the city of Riverview, but from communities as distant as Ontario, Canada, normally is not supported by a community the size of the city of Riverview through either taxes or fees. The city of Riverview is engaging in a proprietary function, entering the business of waste disposal for the purpose of raising funds and making a profit. Under the circumstances, it should be held to the same standard as any other business venture.

Affirmed.

214 Mich App 570; 543 NW2d 356 (1995) affirmed.

*Crystal & Johnson, P.L.C.* (by *Lloyd G. Johnson*), for Kootsillas.

*Cummings, McClorey, Davis & Acho, P.C.* (by *Gail P. Massad*), for City of Riverview.

Amicus Curiae:

*Granzotto & Nicita, P.C.* (by *Angela J. Nicita*), for Michigan Trial Lawyers Association.

KELLY, J. We granted leave to determine whether the city of Riverview can be held liable under the proprietary function exception to governmental immunity for injuries that occurred at its landfill. We conclude that operation of the landfill is a proprietary function and that the city is subject to liability.

I

In 1967, city of Riverview voters approved a bond proposal to purchase real property for a landfill. Construction started in the summer of 1968, and by 1969, the landfill was operating. By 1990, it served seventeen municipal customers in the southern Wayne County area. It also accepted commercial waste from

numerous sources including the county of Wayne and the province of Ontario, Canada. It bore a type II designation, meaning it accepted general household and nonhazardous waste.

When a hauler delivered waste to the landfill, it stopped at a gatehouse. Its volume of waste was measured and a fee charged.[1] The gate attendant then directed the driver to the active fill area with instructions about where to dump the waste.

On January 17, 1990, Jimmie Coleman drove his garbage truck into the city of Riverview landfill to unload garbage. A second truck, owned by Albright Construction Company, and driven by Francis Kootsillas, was already at the site. Kootsillas was standing near his truck when Coleman backed his vehicle parallel to Kootsillas' truck.

Coleman noticed that two of the tires on Kootsillas' truck were flat. He warned Kootsillas of the problem and the latter acknowledged by nodding his head.

Soon after, as Kootsillas operated the lift on his truck to unload garbage, the truck overturned and fell on Coleman's truck. Coleman was pinned inside, suffering a leg injury.

Coleman and his wife filed suit against the Albright Construction Company, Kootsillas, and the city of Riverview. They asserted that the city was liable because it allowed the road and surrounding areas to become muddy and unmanageable. The conditions allegedly had contributed to the truck's overturning. Purportedly, the city had failed to remedy the hazard or warn drivers of the increased danger of dumping garbage under muddy conditions.

---

[1] If the hauler had an account with the city, the account was credited.

The Colemans agreed to a voluntary dismissal of the city, in the belief that no exception to governmental immunity applied to it. Kootsillas then filed a third-party complaint against the city, raising the same allegations as had the Colemans in their complaint. The Colemans eventually settled with Kootsillas for $350,000 and assigned their rights against the city to Kootsillas.

The city filed a motion for summary disposition pursuant to MCR 2.116(C)(7), arguing that it was immune from tort liability. The trial court granted the motion, finding that the operation of the city's landfill was not a proprietary function.

The Court of Appeals reversed. 214 Mich App 570; 543 NW2d 356 (1995). It held that the landfill was a proprietary activity, in that it was conducted to produce a pecuniary profit, and its operation was not normally supported by taxes and fees. We granted the city's application for leave to appeal. 454 Mich 906 (1997).

II

Trial courts' orders granting summary disposition are reviewed de novo on appeal. In this case, the trial court rendered summary disposition pursuant to MCR 2.116(C)(7),  on the basis of governmental immunity.

When deciding a motion under MCR 2.116(C)(7), courts must consider the pleadings as well as any affidavits and documentary evidence submitted by the parties. MCR 2.116(C)(5); *Patterson v Kleiman*, 447 Mich 429; 526 NW2d 879 (1994).

III

Michigan's governmental immunity statute provides that "all governmental agencies shall be immune from tort liability in all cases wherein the government agency is engaged in the exercise or discharge of a governmental function." MCL 691.1407(1); MSA 3.996(107)(1). The Legislature has defined "governmental function" as "an activity which is expressly or impliedly mandated or authorized by constitution, statute, local charter or ordinance, or other law." MCL 691.1401(f); MSA 3.996(101)(f). In *Ross v Consumers Power Co (On Rehearing)*,[2] this Court stated that:

> When a governmental agency engages in mandated or authorized activities, it is immune from tort liability, unless the activity is proprietary in nature (as defined in § 13) or falls within one of the other statutory exceptions to the governmental immunity act. Whenever a governmental agency engages in an activity which is not expressly or impliedly mandated or authorized by constitution, statute, or other law (i.e., an *ultra vires* activity), it is not engaging in the exercise or discharge of a governmental function. The agency is therefore liable for any injuries or damages incurred as a result of its tortious conduct. [Citations omitted.]

Kootsillas argues that the operation of the city's landfill is an ultra vires activity. Therefore, the city is not entitled to immunity. He acknowledges that, with respect to a municipality's collection and disposal of its own garbage, its activities involve a governmental function. *Curry v Highland Park*, 242 Mich 614, 623; 219 NW 745 (1928). Cities have a statutory right to own and run facilities to dispose of their own waste

---

[2] 420 Mich 567, 620; 363 NW2d 641 (1984).

and garbage. MCL 123.241; MSA 5.2661,[3] MCL 123.261; MSA 5.2681.[4] Moreover, they may form agreements jointly to run the facilities. MCL 123.241; MSA 5.2661.

IV

The fact that a landfill accepts garbage from outside its borders for a fee does not turn the activity into an ultra vires one. The collection of garbage is a matter of public health. Matters of public health are state concerns, not singularly local ones. *Id.* When municipalities collect garbage and run disposal sites, they are acting as an arm of the state. *Curry, supra.* Therefore, a city's disposal of garbage from areas outside its jurisdiction continues to be a matter of public health and a governmental function. *Curry, supra* at 623. However, the fact that garbage collection and disposal is a governmental function does not mean that a city cannot be held liable for its employees' tortious conduct. It may be liable if the activity is proprietary in nature. *Hyde v Univ of Michigan Bd of Regents*, 426 Mich 223, 254; 393 NW2d 847 (1986). The proprietary function exception to governmental immunity provides in pertinent part:

> The immunity of the governmental agency shall not apply to actions to recover for bodily injury or property damage

---

[3] This statute was repealed by 1994 PA 451. It is now MCL 324.4301; MSA 13A.4301.

[4]      The city council of a city, whether organized under the general law or special charter, or the president and board of trustees of a village may establish and maintain garbage systems or plants for the collection and disposal of garbage in the city or village, and may levy a tax not to exceed 3 mills on the dollar on all taxable property in the city or village according to the valuation of the same, as made for the purpose of state and county taxation by the last assessment in the city or village for these purposes.

arising out of the performance of a proprietary function as defined in this section. Proprietary function shall mean any activity which is conducted primarily for the purpose of producing a pecuniary profit for the governmental agency, excluding, however, any activity normally supported by taxes or fees. [MCL 691.1413; MSA 3.996(113).]

We previously held that the definition of proprietary function is clear and unambiguous. *Hyde, supra* at 257. Two tests must be satisfied: The activity (1) must be conducted primarily for the purpose of producing a pecuniary profit, and (2) it cannot be normally supported by taxes and fees. *Id.* at 258.

In determining whether the agency's primary purpose is to produce a pecuniary profit, we stated that certain considerations should be taken into account. The first is whether a profit is actually generated.

> The fact that a governmental agency pursues an activity despite consistent losses may be evidence that the primary purpose is not to make a pecuniary profit, but it is not conclusive evidence. Conversely, the fact that the activity consistently generates a profit may evidence an intent to produce a profit. [*Id.* at 258 (citations omitted).]

The second consideration is "where the profit generated by the activity is deposited and how it is spent."

> If the profit is deposited in the governmental agency's general fund or used to finance unrelated functions, this could indicate that the activity at issue was intended to be a general revenue-raising device. If the revenue is used only to pay current and long-range expenses involved in operating the activity, this could indicate that the primary purpose of the activity was not to produce a pecuniary profit. [*Id.* at 259 (citations omitted).]

It is clear that the primary purpose of the city of Riverview landfill was to produce a pecuniary profit.[5] The city's financial records establish that, from 1982 through 1990, the landfill consistently generated a substantial profit, ultimately exceeding seven million dollars.

Moreover, the profit generated was used to fund other city projects. Landfill profits were spent on the expansion of the fire hall and the purchase and modification of a building to house city hall. The profits also helped fund city operations, such as the police and fire departments, the city library, the city ski hill, and the department of public services.[6]

Finally, the city's millage rate has steadily declined, dipping from 18.38 mills in the early 1980s to 13.88 mills in the early 1990s. The drop is due, in part, to the availability of landfill revenue that was transferred to the general fund.[7]

Next, it must be determined whether the activity is one "normally supported by taxes or fees." MCL 691.1413; MSA 3.996(113).[8] When deciding whether an activity satisfies the second part of the proprietary function test, it is important to consider the type of activity under examination. In this case, it is more than the operation of a municipal landfill. It is the

[5] The city conceded this point for purposes of summary disposition.

[6] Deposition testimony indicates that, without the income from the landfill, the city would be obligated either to reduce general operations or increase revenue through other means, such as raising taxes.

[7] According to Mayor Peter Rotteveel, landfill revenue transferred to the general fund to maintain or lower property taxes has ranged from $86,000 in 1986 to $1.3 million in 1991. The savings to the taxpayer amounts to between four and six mills.

[8] As we noted in *Hyde*, it does not matter if the landfill is actually supported by taxes or fees. *Id.* at 260, n 32.

operation of a commercial landfill that accepts garbage, not merely from the city of Riverview, but from communities as distant as Ontario, Canada. An enterprise of such vast and lucrative scope is simply not normally supported by a community the size of the city of Riverview either through taxes or fees.[9]

The fact that the city charges fees to garbage haulers unloading refuse into its landfill does not alter this conclusion. Any governmental activity must exact a fee if it is to produce a pecuniary profit. If imposition of a use fee like Riverview's would suffice to defeat the proprietary function exception to governmental immunity, almost no city activity would subject a city to liability. That could not have been the intention of the Legislature.[10]

The city of Riverview is engaging in a proprietary function, entering the business of waste disposal for the purpose of raising funds and making a profit. The Legislature has decided that a municipality should not be allowed to escape liability for its negligence when participating in a proprietary function. Under the circumstances present in this case, the government should be held to the same standard as any other business venture.[11]

---

[9] The city of Riverview had approximately 14,000 residents at the time in question.

[10] In *Hyde*, we held, without explanation, that financial fees charged for medical services and taxes levied by participating communities financed the operation of the hospitals under consideration. Therefore, the second part of the proprietary function test was not satisfied. *Id.* at 259-260. Because we had already concluded that part one of the test had not been satisfied, the holding regarding part two is dicta.

[11] This opinion should not be read to change the way courts should interpret the exceptions to governmental immunity. They are to be narrowly construed. This is an unusual case, one in which the government has chosen to run a commercial enterprise for the purpose of reaping a pecuniary profit. Because of the breadth of the enterprise, this case is of

V

Under the facts presented in this case, we conclude that the landfill is a proprietary function. Therefore, we affirm the Court of Appeals decision remanding the matter to the trial court for further proceedings.

MALLETT, C.J., and BRICKLEY, CAVANAGH, BOYLE, WEAVER, and TAYLOR, JJ., concurred with KELLY, J.

---

the type that the proprietary function statute intended to address, even when the exception is given a narrow construction.