# STATE OF MICHIGAN

# COURT OF APPEALS

THOMAS GOODHUE,

Plaintiff-Appellant,

v

DEPARTMENT OF TRANSPORTATION,

Defendant-Appellee.

FOR PUBLICATION
May 16, 2017
9:00 a.m.

No. 332467
Court of Claims
LC No. 15-000224-MD

Before: GADOLA, P.J., and JANSEN and SAAD, JJ.

PER CURIAM.

Plaintiff appeals the trial court's order that granted defendant's motion for summary disposition pursuant to MCR 2.116(C)(7). For the reasons provided below, we affirm.

## I. BASIC FACTS

Plaintiff was a U.S. Customs and Border Protection Officer who worked at the Blue Water Bridge. On April 8, 2015, plaintiff stepped into a hole in one of the toll booth lanes and injured himself.

On May 18, 2015, plaintiff served defendant with a notice of intent to file a claim. And on October 5, 2015, plaintiff filed suit in the court of claims. After defendant initially moved for summary disposition under MCR 2.116(C)(7), plaintiff filed an amended complaint, wherein he claimed that three exceptions to governmental immunity applied. In Count I, plaintiff alleged that defendant was not immune from suit based on the roadway exception; in Count II, plaintiff alleged that defendant was not immune from suit because it was engaging in a proprietary function at the time of the incident; and in Count III, plaintiff alleged that defendant was not immune from tort liability because of the public-building exception to governmental immunity.

Defendant thereafter filed an amended motion for summary disposition. Defendant argued that Counts I and III were barred because plaintiff failed to file his claim in the court of claims within 120 days, which violates the notice requirement of MCL 691.1404. Defendant also argued that Count II was barred because its operation of the Blue Water Bridge was not a proprietary function. The trial court agreed and ultimately granted defendant's motion on all counts.

## II. STANDARD OF REVIEW

-1-

We review a trial court's decision on a motion for summary disposition de novo. *Moraccini v Sterling Heights*, 296 Mich App 387, 391; 822 NW2d 799 (2012). Summary disposition is appropriate under MCR 2.116(C)(7) if a claim is barred because of, among other things, "immunity granted by law." When reviewing a motion for summary disposition under this subrule, a court accepts "all well-pleaded factual allegations as true and construe[s] them in favor of the plaintiff, unless other evidence contradicts them." *Dextrom v Wexford Co*, 287 Mich App 406, 428; 789 NW2d 211 (2010). Further,

> [i]f any affidavits, depositions, admissions, or other documentary evidence are submitted, the court must consider them to determine whether there is a genuine issue of material fact. If no facts are in dispute, and if reasonable minds could not differ regarding the legal effect of those facts, the question whether the claim is barred is an issue for the court. [*Id.* at 429 (citations omitted).]

We also review issues of statutory interpretation de novo. *City of Riverview v Sibley Limestone*, 270 Mich App 627, 630; 716 NW2d 615 (2006).

## III. ANALYSIS

Under Michigan's governmental tort liability act (GTLA), MCL 691.1401 *et seq.*, governmental agencies are immune from tort liability when they are "engaged in the exercise or discharge of a governmental function." MCL 691.1407(1). However, the act provides several exceptions to this broad grant of immunity.[1] As noted, plaintiff contends that three exceptions are relevant: (1) the highway exception, (2) the proprietary-function exception, and (3) the public-building exception.

### A. COUNT II—PROPRIETARY FUNCTION EXCEPTION

In the second count of his amended complaint, plaintiff avers that defendant cannot claim governmental immunity because its operation of the Blue Water Bridge is a proprietary function. Plaintiff argues that the trial court erred when it granted summary disposition to defendant on this count. We disagree.

The proprietary-function exception to governmental immunity is found in MCL 691.1413 and provides the following:

> The immunity of the governmental agency shall not apply to actions to recover for bodily injury or property damage arising out of the performance of a proprietary function as defined in this section. Proprietary function shall mean

---

[1] "The six statutory exceptions are: the highway exception, MCL 691.1402; the motor-vehicle exception, MCL 691.1405; the public-building exception, MCL 691.1406; the proprietary-function exception, MCL 691.1413; the governmental-hospital exception, MCL 691.1407(4); and the sewage-disposal-system-event exception, MCL 691.1417(2) and (3)." *Wesche v Mecosta Co Rd Comm*, 480 Mich 75, 84 n 10; 746 NW2d 847 (2008).

any activity which is conducted primarily for the purpose of producing a pecuniary profit for the governmental agency, excluding, however, any activity normally supported by taxes or fees. . . .

"Therefore, to be a proprietary function, an activity '(1) must be conducted primarily for the purpose of producing a pecuniary profit; and (2) it cannot normally be supported by taxes and fees.'" *Herman v Detroit*, 261 Mich App 141, 145; 680 NW2d 71 (2004), quoting *Coleman v Kootsillas*, 456 Mich 615, 621; 575 NW2d 527 (1998).

"The first prong of the proprietary function test has two relevant considerations. First, whether an activity actually generates a profit is not dispositive, but the existence of profit is relevant to the governmental agency's intent." *Id.* Importantly, "[a]n agency may conduct an activity on a self-sustaining basis without being subject to the proprietary function exemption." *Id.*; see also *Hyde v Univ of Mich Bd of Regents*, 426 Mich 223, 258-259; 393 NW2d 847 (1986). "Second, where the profit is deposited and where it is spent indicate intent. If profit is deposited in the general fund or used on unrelated events, the use indicates a pecuniary motive, but use to defray expenses of the activity indicates a nonpecuniary purpose." *Herman*, 261 Mich App at 145.

Here, Myron Frierson, defendant's Bureau Director of Finance Administration, testified that the Blue Water Bridge receives income from a variety of sources, but the primary source is from tolls. Frierson explained that regardless of the source of the income, all monies are placed in the same Blue Water Bridge sub-fund, which is part of the state's trunk line fund. Importantly, none of the money generated ends up in the state's general fund. He also explained that the money is used solely "for the operation of the Blue Water Bridge." Frierson testified that in addition to daily operations, money from the sub-fund is used for capital projects and to pay debt service on bonds that were issued for projects associated with the Blue Water Bridge. We agree with the trial court that "[t]hese facts clearly demonstrate that the operation of the Blue Water Bridge is not to produce a pecuniary profit, but rather, to operate the bridge on a self-sustaining basis."

Plaintiff's reliance on the fact that the amount of income defendant has received in conjunction with the Blue Water Bridge in the last several years has exceeded its expenses is misplaced. As Frierson noted, these excess or surplus funds were planned "in anticipation of the capital needs," i.e. "anticipated future costs." This evidence shows that defendant operates the Blue Water Bridge on a self-sustaining basis and uses the money for the Blue Water Bridge. This is why the generation of a profit is not dispositive. See *id.* Indeed, as the Michigan Supreme Court has noted, "If the availability of immunity turned solely upon an examination of the ledgers and budgets of a particular activity, a fiscally responsible governmental agency would be 'rewarded' with tort liability for its sound management decisions. Such a rule would discourage implementation of cost-efficient measures and encourage deficit spending." *Hyde*, 426 Mich at 258.

We also reject plaintiff's assertion that the operation of the Blue Water Bridge has a real purpose to increase the "profit" of the state because any Blue Water Bridge expansion project will generate significant tax revenue for the state. While Frierson did opine that the state and the city of Port Huron would benefit financially from a future expansion project, the record shows

-3-

that any such benefits would be ancillary to defendant's operation of the bridge. In sum, there is no evidentiary support for the contention that the primary purpose in running an efficient international bridge crossing is to improve the financial bottom line of any other government.

Accordingly, because the evidence conclusively shows that defendant operates the Blue Water Bridge on a self-sustaining basis instead of with a pecuniary intent, the trial court properly granted summary disposition in favor of defendant on plaintiff's Count II.

### B. COUNTS I & III—ROADWAY & PUBLIC-BUILDING EXCEPTIONS

Plaintiff argues that the trial court erred when it granted summary disposition to defendant on Counts I and III. Plaintiff asserts, incorrectly, that his claims were not barred because he was not required to file notice in the court of claims within 120 days of the accident.

In Count I, plaintiff alleges a defect in the highway, which is governed by the GTLA's notice requirements of MCL 691.1404. See *Plunkett v Dep't of Transp*, 286 Mich App 168, 176; 779 NW2d 263 (2009). Plaintiff alleges in Count III that the public-building exception to governmental immunity is implicated. Under MCL 691.1406, if a claim related to the public-building exception is against the state, then notice "shall be given as provided in [MCL 691.1404]." Therefore, the notice provisions of MCL 691.1404 control for both Counts I and III and provide as follows:

> (1) As a condition to any recovery for injuries sustained by reason of any defective highway, the injured person, within 120 days from the time the injury occurred, except as otherwise provided in subsection (3)[2] shall serve a notice on the governmental agency of the occurrence of the injury and the defect. The notice shall specify the exact location and nature of the defect, the injury sustained and the names of the witnesses known at the time by the claimant.
>
> (2) The notice may be served upon any individual, either personally, or by certified mail, return receipt requested, who may lawfully be served with civil process directed against the governmental agency, anything to the contrary in the charter of any municipal corporation notwithstanding. In the case of the state, such notice shall be filed in triplicate with the clerk of the court of claims. Filing of such notice shall constitute compliance with [MCL 600.6431], requiring the filing of notice of intention to file a claim against the state. . . .

At issue is whether plaintiff satisfied these statutory notice requirements. Subsection (1) provides that notice of the injury, defect, and known witnesses must be filed "within 120 days from the time the injury occurred." Subsection (2) then details how that notice is to be effectuated. Specifically, the first sentence of subsection (2) provides that the notice may be served upon an appropriate individual. However, the very next sentence clarifies that when the

---

[2] Subsection (3) deals with injured persons under the age of 18 and is not implicated here.

"state"[3] is a defendant, "such notice shall be filed in triplicate with the clerk of the court of claims." Here, plaintiff filed his complaint[4] with the clerk of the court of claims on October 5, 2015, which was more than 120 days after the injury occurred. Therefore, plaintiff's filing of the notice is deficient, which is "fatal to a plaintiff's claim against a government agency." *McLean v City of Dearborn*, 302 Mich App 68, 74; 836 NW2d 916 (2013).

Plaintiff claims that his filing with the court of claims was timely because he had six months from the time of his injury to file his notice instead of 120 days. Plaintiff relies on MCL 691.1404(2)'s reference of MCL 600.6431[5] as incorporating MCL 600.6431(3)'s timing requirements. We are not persuaded. MCL 691.1404(2) provides, "Filing of such notice shall constitute compliance with [MCL 600.6431] . . . ." As the trial court aptly noted, this language merely provides that compliance with MCL 691.1404 shall be treated as compliance with MCL 600.6431, irrespective of the fact that MCL 600.6431's enumerated requirements may not have been satisfied. Nothing in the language of MCL 691.1404(2) shows that it actually incorporates any of MCL 600.6431's requirements.

We also reject plaintiff's view that MCL 691.1404(2)'s use of the language "such notice" does not refer to the notice referenced in MCL 691.1404(1). The first sentence of MCL

---

[3] The GTLA defines "state" to include the state of Michigan along with, in pertinent part, "its agencies" and "departments." MCL 691.1401(g). Thus, there is no question that defendant, the Michigan Department of Transportation, is a "state" under the statute.

[4] For our purposes, we assume, without deciding, that the complaint qualifies as a proper notice.

[5] MCL 600.6431 provides:

(1) No claim may be maintained against the state unless the claimant, within 1 year after such claim has accrued, files in the office of the clerk of the court of claims either a written claim or a written notice of intention to file a claim against the state or any of its departments, commissions, boards, institutions, arms or agencies, stating the time when and the place where such claim arose and in detail the nature of the same and of the items of damage alleged or claimed to have been sustained, which claim or notice shall be signed and verified by the claimant before an officer authorized to administer oaths.

(2) Such claim or notice shall designate any department, commission, board, institution, arm or agency of the state involved in connection with such claim, and a copy of such claim or notice shall be furnished to the clerk at the time of the filing of the original for transmittal to the attorney general and to each of the departments, commissions, boards, institutions, arms or agencies designated.

(3) In all actions for property damage or personal injuries, claimant shall file with the clerk of the court of claims a notice of intention to file a claim or the claim itself within 6 months following the happening of the event giving rise to the cause of action.

691.1404(2) states, "*The notice* may be served . . . ." (Emphasis added.) The second sentence then provides, "In the case of the state, *such notice* must be filed . . . ." (Emphasis added.) Unquestionably, the reference in the second sentence refers back to the notice in the first sentence. Plaintiff claims that a dictionary definition of "such" shows that it is referring to a "similar" or "like" notice. But the most relevant definition of "such" is "of the character, quality, or extent *previously indicated or implied*." *Merriam-Webster's Collegiate Dictionary* (11th ed) (emphasis added).[6]

Consequently, because plaintiff failed to effectuate the statutorily mandated notice, his claims were barred, and the trial court properly granted defendant's motion for summary disposition with respect to plaintiff's Counts I and III.

Affirmed. Defendant, as the prevailing party, may tax costs pursuant to MCR 7.219.

/s/ Michael F. Gadola
/s/ Kathleen Jansen
/s/ Henry William Saad

---

[6] The example the dictionary gives for plaintiff's preferred definition is "a bag [such] as a doctor carries." It is easy to see that the use of "such" in that instance is not consistent with the use we are presented with. On the contrary, the pertinent definition uses the example, "in the past few years many [such] women have shifted to full-time jobs," which is more in line with the statute's usage, as it implies a previously mentioned noun.