*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ESTATE OF ZACHARY ADAMS, by BRENT
ADAMS and LOU ANN MORGAN, personal
representatives,

UNPUBLISHED
September 24, 2020

        Plaintiffs-Appellants,

v

No. 341472
Grand Traverse Circuit Court
LC No. 2016-031740-NO

TRAVERSE CITY LIGHT AND POWER,

        Defendant-Appellee,

and

TREES, INC.,

        Defendant.

Before: STEPHENS, P.J., and SERVITTO and RONAYNE KRAUSE, JJ.

STEPHENS, J. (*dissenting*).

I disagree with the majority's conclusion that defendant's operation of an electric utility was not a proprietary function.

I believe that this defendant's operations are more akin to the landfill in *Coleman*[1] than the hospital in *Hyde*[2]. I am mindful that the defendant's agents have testified that the primary purpose of operating the electric utility is to provide low-cost and reliable energy to its customers. This is indeed one of its purposes, but a review of its operation belies low-cost energy being its primary purpose. Defendant generates an annual average profit greater than that in *Coleman* serving customers in a wide geographic

---

[1] *Coleman v Kootsillas*, 456 Mich 615; 575 NW2d 527 (1998).

[2] *Hyde v Univ of Michigan Bd of Regents*, 426 Mich 223; 393 NW2d 847 (1986).

area spanning two counties.[3] Defendant transfers a significant fee from its gross revenues and again from its net profits to the City's general fund to be spent in ways that include "reducing the current indebtedness of the City" and "supplementing the tax revenues of the City by using this money to defray the usual expenses of City government". Payment of the fee undoubtedly results in revenue for the City and further weighs in favor of a pecuniary motive, especially given that the fee is a compulsory five percent of defendant's **gross** revenue. Additionally, defendant passed its excess revenue on to the City for its own use, as the landfill did in *Coleman*. See *Coleman*, 456 Mich at 622. Like the distant consumers in *Coleman*, there is no evidence that the non-resident users reaped the benefits from the City's use of the revenue deposited into the general fund or from the unrelated improvements to the City by defendant's million-dollar-gift in 2013.

Addressing the issue of whether the function at issue is normally supported by taxes and fees, the defendant has correctly noted that this Court previously found that the public lighting function in the city of Detroit was a governmental function, not a proprietary one. In both *Herman*[4] and *Taylor*[5], the agency was a general fund entity and operated at a loss. Additionally, the services rendered by the department of public lighting were limited to consumers within the corporate limits of Detroit. Thus, the analogy to this entity which serves consumers outside of its corporate limits, generates a significant and consistent profit, and is not a general fund agency, fails. The issue here is quite direct: Is the service provided by the defendant one that is **normally** supported by fees and taxes? This Court can take judicial notice that electrical power is offered commercially by the myriad entities regulated by the Public Service Commission. However, the defendant has presented neither this Court nor the trial court with any other power generating entity within the state that is operated by a city of less than twenty-five thousand residents that generates a consistent profit. The trial court in this case did not engage in the analysis urged by this Court in *Dextrom v Wexford County*, 287 Mich App 406, 426; 789 NW2d 211 ( 2010):

> Thus, the Court looked at how other communities supported their landfills, rather than merely the funding history of the activity in question. Therefore, under *Coleman*, the trial court must consider the scope of defendants' landfill in relation to the size of the community, its profitability, and how other communities of similar size support their landfills.

Neither the trial court nor this panel has been provided with any comparative data on any municipally operated utility. As was the case in *Dextrom*, a question of fact exists as to whether the City's utility service was an activity "normally supported by taxes or fees".

I would reverse and remand the matter for plaintiffs to proceed to trial on their negligence claim under the proprietary function exception to governmental immunity.

/s/ Cynthia Diane Stephens

---

[3] In *Coleman*, the city "generated a substantial profit, ultimately exceeding 7 million dollars" over eight years' time. 456 Mich at 622.

[4] *Herman v Detroit*, 261 Mich App 141; 680 NW2d 71 (2004).

[5] *Taylor v Detroit,* 182 Mich App 583; 452 NW2d 826 (1989).