*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ELIA COMPANIES, LLC,

        Plaintiff-Appellant,

v

UNIVERSITY OF MICHIGAN REGENTS,

        Defendant-Appellee.

FOR PUBLICATION
January 21, 2021
9:10 a.m.

No. 351064
Court of Claims
LC No. 18-000148-MK

Before: SWARTZLE, P.J., and RONAYNE KRAUSE and RICK, JJ.

RONAYNE KRAUSE, J.

Plaintiff, Elia Companies, LLC, filed a lawsuit in the Washtenaw County Circuit Court against defendant, the University of Michigan Regents, after defendant terminated an agreement in April 2018 that allowed for plaintiff to operate a coffee shop in one of defendant's student unions. Shortly after plaintiff filed its lawsuit, defendant filed a notice of transfer, moving the case to the Court of Claims. Ultimately, the Court of Claims granted summary disposition in favor of defendant under MCR 2.116(C)(7). It concluded that defendant was entitled to dismissal because plaintiff did not file a written claim or a written notice of intention to file a claim in the Court of Claims, let alone a signed and verified notice or claim, by April 2019. Plaintiff appeals as of right. We affirm in part, reverse in part, and remand for further proceedings.

## I. BACKGROUND

According to the complaint, plaintiff is the owner and operator of various restaurants and coffee shops, including Think Fresh Restaurant Holdings, LLC ("Think Fresh"), and Perfect Cup-Ann Arbor, LLC ("Perfect Cup"), both of which plaintiff seems to treat somewhat like alter egos. Defendant owns and operates a building or facility called the Michigan Union ("the Union"), which serves as a gathering place for the University of Michigan students and, in relevant part, features some commercial restaurant space. In 2013, the parties entered into a lease agreement for plaintiff's rental of space in the Union; pursuant to that lease, plaintiff, apparently through Perfect Cup, constructed and operated a Starbucks coffee shop franchise. Plaintiff found its coffee shop operation profitable. Meanwhile, defendant operated the Union at a consistent loss. In March 2017, defendant announced that it would be renovating the Union. On April 17, 2018, defendant

sent plaintiff a letter terminating the lease, effective April 20, 2018, on the basis of a several-page-long enumerated list of alleged violations by plaintiff, including details and dates of the alleged violations, that occurred between April 2014 and December 2017. Defendant required plaintiff to vacate the premises. In the same year, defendant closed the Union for renovations.

In August 2018, plaintiff commenced the instant action in Washtenaw Circuit Court. Defendant promptly filed a notice of transfer removing the case to the Court of Claims, pursuant to MCL 600.6404(3) and MCL 600.6419(1). Plaintiff objected, contending that it had a right to a jury trial, but the Court of Claims rejected plaintiff's objection. Late in August 2018, defendant filed an answer and affirmative defenses asserting that "[m]any of the claims asserted in the Complaint are barred by governmental immunity" and "[p]laintiff's Complaint is not verified as required by law." Defendant noted, in a footnote on the first page of its answer, that plaintiff's complaint was "not proper as to form as it is not verified as required by MCL 600.6434(2)."

The Court of Claims permitted plaintiff to file an amended complaint to plead in avoidance of governmental immunity. Plaintiff's amended complaint alleged breach of contract (Count I); violation of the anti-lockout statute, MCL 600.2918 (Count II); breach of covenant for quiet possession, use, and enjoyment (Count III); constructive eviction (Count IV); common-law and statutory conversion (Count V); unjust enrichment (Count VI); and inverse condemnation (Count VII). Defendant again filed an answer citing MCL 600.6434(2) in a footnote, and it filed affirmative defenses that again included governmental immunity and a lack of verification "as required by law." Defendant eventually moved for summary disposition pursuant to MCR 2.116(C)(7), (C)(8), and (C)(10), arguing that plaintiff's entire action should be dismissed because plaintiff failed to comply with Court of Claims verification requirements, plaintiff lacked standing because Perfect Cup had actually operated the coffee shop even though only plaintiff was a party to the lease, several of plaintiff's claims were duplicative of or precluded by plaintiff's breach-of-contract claim, defendant never exercised any eminent domain powers, and plaintiff's tort claims were barred by governmental immunity.

The Court of Claims ultimately dismissed plaintiff's case pursuant to MCR 2.116(C)(7) for failure to comply with the notice requirements of MCL 600.6431(1).[1] The Court of Claims also observed that most of plaintiff's claims would have been independently subject to dismissal as a matter of law in any event, because they were torts barred by governmental immunity, duplicative, or controlled by the lease contract. This appeal followed.

## II. STANDARD OF REVIEW

A grant or denial of summary disposition is reviewed de novo on the basis of the entire record to determine if the moving party is entitled to judgment as a matter of law. *Maiden v*

---

[1] MCL 600.6431(1) requires claimants to file "either a written claim or a written notice of intention to file a claim" within a year of the claim's accrual. It appears that the Court of Claims particularly analyzed whether plaintiff had complied with the signature and verification requirement in MCL 600.6431(1)(d). The Court of Claims explicitly declined to address MCL 600.6434(2), which defendant cited in its answers to plaintiff's complaints, because the verification requirement in that statute contained no language imposing dismissal for noncompliance.

*Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). Under MCR 2.116(C)(7), where the claim is allegedly barred, the trial court must accept as true the contents of the complaint, unless they are contradicted by documentary evidence submitted by the moving party. *Id*. at 119. A motion brought under MCR 2.116(C)(8) should be granted only where the complaint is so legally deficient that recovery would be impossible even if all well-pleaded facts were true and construed in the light most favorable to the non-moving party. *Id*. Only the pleadings may be considered when deciding a motion under MCR 2.116(C)(8). *Id*. at 119-120. Appellate courts will affirm a right result arrived at on the basis of wrong reasoning. *Kirl v Zinner*, 274 Mich 331, 336; 264 NW 391 (1936). This is especially the case where review is de novo. *Michigan Gas & Elect Co v City of Dowagiac*, 278 Mich 522, 526; 270 NW 772 (1936).

### III. GOVERNMENTAL IMMUNITY

As an initial matter, we agree with the alternative basis for dismissal cited by the Court of Claims for most of plaintiff's claims: they are barred by governmental immunity or because they are controlled by plaintiff's breach of contract claims. As to those claims, we need not consider whether plaintiff complied with the Court of Claims notice or verification requirements.

"University of Michigan (and its governing board, the Board of Regents) is one of the governmental units to which Michigan's governmental immunity statute applies." *Harris v Univ of Mich Bd of Regents*, 219 Mich App 679, 683; 558 NW2d 225 (1996). "Under the government tort liability act (GTLA), MCL 691.1401 *et seq*., governmental agencies are broadly shielded from tort liability." *Fairley v Dep't of Corrections*, 497 Mich 290, 297; 871 NW2d 129 (2015). The state or its subdivisions cannot be sued without legislative consent, and the Legislature "may place conditions or limitations on the liability imposed." *ADR Consultants, LLC v Mich Land Bank Fast Track Auth*, 327 Mich App 66, 74; 932 NW2d 226 (2019) (quotation omitted).

### A. PROPRIETARY FUNCTION EXCEPTION

Plaintiff tacitly does not dispute that defendant would in general be immune to tort liability, but plaintiff argues that governmental immunity does not apply in this matter because defendant was engaging in a "proprietary function." The proprietary function exception to governmental immunity permits tort liability arising out of "any activity which is conducted primarily for the purpose of producing a pecuniary profit for the governmental agency, excluding, however, any activity normally supported by taxes or fees." MCL 691.1413. To establish a proprietary function, "[t]wo tests must be satisfied: The activity (1) must be conducted primarily for the purpose of producing a pecuniary profit, and (2) it cannot be normally supported by taxes and fees."[2] *Coleman v Kootsillas*, 456 Mich 615, 621; 575 NW2d 527 (1998). Whether the activity generates a profit or a loss is relevant, but not conclusive, evidence. *Id*. Similarly, it is probative but not dispositive whether revenues are placed into a general fund or used to pay for the activity itself. *Id*. at 621-622. Ultimately, liability is permitted "only where the *primary* purpose is to produce a pecuniary

---

[2] Because both of these tests must be satisfied, and, as we will discuss, the activity at issue here was clearly not conducted primarily for the purpose of producing a pecuniary profit, we decline to consider whether it would be "normally supported by taxes and fees."

profit." *Hyde v Univ of Mich Bd of Regents*, 426 Mich 223; 258-259; 393 NW2d 847 (1986) (emphasis in original).

Plaintiff states, without any citation to any evidence, that defendant leased commercial space in the Union "for a profit." In fact, the unrefuted evidence established that defendant operated the Union at a *consistent loss*. However, plaintiff also accurately observes that, as noted, operating at a loss is not dispositive. *Coleman*, 456 Mich at 621. Plaintiff argues that the Union effectively competed with other restaurants in the vicinity, defendant required plaintiff to pay a percentage of its gross sales, and defendant considered maximal revenue as a factor in leasing space to tenants. Nevertheless, plaintiff's focus is too narrow: courts "look to the general activity involved rather than the specific conduct engaged in" when considering the applicability of the proprietary function exception to governmental immunity. *Ward v Mich State Univ (On Rem)*, 287 Mich App 76, 84; 782 NW2d 514 (2010). The general activity at issue is operation of the Union.

The evidence established that the Union was founded more than a century ago as "a center of campus life" for students at the University of Michigan, and it continues to be operated for the purpose of enriching student life by providing a social gathering place. The provision of commercial food establishments is part of that function. Plaintiff correctly notes that defendant's "University Support for University Unions" document states, in part, that the Union's management "will strive to achieve the greatest possible revenue stream from activities and operations." However, that statement goes on to specify that those activities and operations must be "consonant with the mission and philosophy that underlies the Unions' operations" and that "net profits from these enterprises will offset the required funding from University sources." In general, the evidence shows that revenues from the commercial operations at the Union were not placed into a general fund for defendant, but rather were placed into the Union's own fund; and defendant, as a matter of policy, actually supported the Union. Far from showing profit-generation to be the *primary* purpose of renting out commercial space in the Union, the evidence showed that defendant sought primarily to provide services for students, but wished to do so with as little loss as feasible. The proprietary function exception "does not penalize a governmental agency's legitimate desire to conduct an activity on a self-sustaining basis." *Hyde*, 426 Mich at 259. Here, defendant did not even try to make the Union self-sustaining.[3]

The Court of Claims correctly determined that the proprietary function exception did not apply, so defendant is immune to any claims sounding in tort. Common-law and statutory conversion both sound in tort. See *Aroma Wines & Equip, Inc v Columbian Distribution Services, Inc*, 497 Mich 337, 348- 362; 871 NW2d 136 (2015). Thus, plaintiff's Count V must be dismissed irrespective of plaintiff's compliance or noncompliance with Court of Claims notice provisions

---

[3] We further note that college athletics programs are considered governmental, rather than proprietary, even if the college generates revenue from ticket sales, and even though at least some sports are quite profitable and involve extensive facilities and support operations. See *Harris*, 219 Mich App at 690-693; *Ward*, 287 Mich App at 85-86. The fact that the University's provision of what amounts to a student enrichment facility entails some support operations that generate revenue on their own similarly lacks dispositive force here.

## B. ANTI-LOCKOUT STATUTE

One of plaintiff's claims is for violation of Michigan's anti-lockout statute, MCL 600.2918. We have found no published authority specifically and clearly addressing whether such a claim sounds in tort, in contract, or possibly in the nature of something else. We adopt the Court of Claims's thoughtful and well-reasoned analysis holding that such a claim sounds in tort, and we reproduce that analysis below.

Plaintiff is seeking recovery under MCL 600.2918(1), which allows recovery of treble, i.e., non-contractual damages. This subsection applies to "[a]ny person who is ejected or put out of any lands or tenements in a forcible and unlawful manner, or being out is afterwards held and kept out[.]" The plain language of this section does not limit its application to contractual disputes, nor does the statute impose liability for the mere breach of a promise. Instead, liability is predicated on "forcible and unlawful" conduct.

In *In re Bradley Estate*, 494 Mich 367, 384; 835 NW2d 545 (2013), the Supreme Court explained that the word "tort" as used in the GTLA refers to "a civil wrong, other than a breach of contract, for which the court will provide a remedy in the form of compensatory damages." And as noted by the *In re Bradley Estate Court*, the GTLA refers not just to "torts," but to "tort liability." *Id*. at 385, citing MCL 691.1407(1). Accordingly, when:

> [c]onstruing the term 'liability' along with the term 'tort,' it becomes apparent that the Legislature intended "tort liability" to encompass legal responsibility arising from a tort. We therefore hold that "tort liability" as used in MCL 691.1407(1) *means all legal responsibility arising from a noncontractual civil wrong for which a remedy may be obtained in the form of compensatory damages*. [*Id*. (emphasis added).]

Returning to the instant case, plaintiff is seeking to impose liability for a noncontractual civil wrong, i.e., being forced out of the premises purportedly in violation of MCL 600.2918, for which a remedy may be obtained in the form of compensatory damages. Although plaintiff has separately alleged a breach of contract action, plaintiff's claim under MCL 600.2918 in Count II does not seek to impose liability for the mere breach of the lease agreement. Rather, Count II seeks treble damages "for an injury caused by the noncontractual civil wrong," i.e., being put out or kept out of land in a "forcible and unlawful manner" in violation of MCL 600.2918(1). This is an attempt to impose liability for far more than the breach of a promise and is instead an attempt to impose tort liability on defendant. See *In re Bradley Estate*, 494 Mich at 389, 391-392. Cf. *Genesee Co Drain Comm'r v Genesee Co*, 321 Mich App 74, 78; 908 NW2d 313 (2017) (holding that an action for unjust enrichment, which implied a contract to prevent unjust enrichment, "ultimately involves contract liability, not tort liability" and such claim is not barred by the GTLA). As a result, plaintiff has, in Count II, alleged a "tort" to which the GTLA is, in theory, applicable. See *id*.

We agree, and therefore plaintiff's claim under the anti-lockout statute, MCL 600.2918, is among those claims that sound in tort and are barred by governmental immunity. Count II of the complaint must also be dismissed irrespective of plaintiff's compliance or noncompliance with Court of Claims notice provisions.

## IV. OTHER BARRED CLAIMS

The courts are not bound by the labels given by parties to their claims; rather, the courts are obligated to scrutinize the substance of the parties' pleadings. *Hartford v Holmes*, 3 Mich 460, 463 (1855); *Adams v Adams*, 276 Mich App 704, 710-711; 742 NW2d 399 (2007). On that basis, the Court of Claims properly also dismissed plaintiff's claims for unjust enrichment; breach of covenant for quiet possession, use, and enjoyment; constructive eviction; and inverse condemnation.

Unjust enrichment is only a viable claim "if there is no express contract covering the same subject matter." *Belle Isle Grill Corp v City of Detroit*, 256 Mich App 463, 478; 666 NW2d 271 (2003). Plaintiff correctly notes that "[i]n general, parties are permitted to plead inconsistent claims and facts in the alternative." *AFSCME Council 25 v Faust Public Library*, 311 Mich App 449, 459; 875 NW2d 254 (2015), citing MCR 2.111(A)(2). Thus, a breach of contract claim and an unjust enrichment claim may be brought in the alternative where there is some question of whether an express contract actually existed. *Keywell and Rosenfeld v Bithell*, 254 Mich App 300, 328; 657 NW2d 759 (2002). However, there is no dispute as to the existence or terms of the lease here. Indeed, plaintiff's claim for unjust enrichment is explicitly premised on defendant's alleged violation of the lease agreement. A plain reading of the amended complaint is that without the lease agreement, no basis for unjust enrichment would exist; and because the unjust enrichment claim is based on an express contract, it cannot be maintained. Thus, Count VI of the complaint must be dismissed irrespective of plaintiff's compliance or noncompliance with Court of Claims notice provisions.

Similarly, plaintiff's claim for breach of covenant for quiet possession, use, and enjoyment expressly asserts that it is derived from rights conferred by the lease agreement. Plaintiff's constructive eviction claim is almost literally duplicative of its claim for breach of covenant for quiet possession, use, and enjoyment. The constructive eviction claim also expressly asserts that plaintiff's allegedly invaded rights were conferred by the lease. The lease expressly provides in paragraph 42, "[s]o long as the TENANT is not in default under this Lease, it shall be entitled to and have quiet enjoyment of the PREMISES."

We note that these two claims are, in effect, legally indistinguishable: the covenant for quiet enjoyment protects lessees from dispossession by lessors, and any such dispossession amounts to an eviction. *Stewart v Lawson*, 199 Mich 497, 498-500; 165 NW 716 (1917). Furthermore, pursuant to a plain reading of the complaint, plaintiff is not truly pleading alternative claims, but rather pleading two functionally-identical claims for breach of one narrow provision of the lease agreement. The Court of Claims correctly construed these two claims in plaintiff's complaint as merely, and redundantly, setting forth a slight redressing of its breach of contract claim. Therefore, the Court of Claims did not err by dismissing Counts III and IV of plaintiff's complaint irrespective of plaintiff's compliance or noncompliance with Court of Claims notice provisions.

Finally, plaintiff does not present any argument that the Court of Claims erred by dismissing its inverse condemnation claim, and, in fact, barely mentions that claim. Thus, it is unclear whether plaintiff regards that dismissal as having been erroneous, and to the extent it does, this claim may be considered abandoned. See *Peterson Novelties, Inc v City of Berkley*, 259 Mich App 1, 14; 672 NW2d 351 (2003). Nonetheless, we may, in the interest of completeness, address this claim, at least to the extent of any controlling legal issues. See *Paschke v Retool Industries (On Reh)*, 198 Mich App 702, 705-706; 499 NW2d 453 (1993), rev'd on other grounds 445 Mich 502; 519 NW2d 441 (1994). Inverse condemnation is a constitutional claim that does not truly sound in tort. See *Tamulion v Mich State Waterways Comm*, 50 Mich App 60, 66-67; 212 NW2d 828 (1973). Furthermore, plaintiff pled inverse condemnation "in the alternative," which, as discussed, is certainly permissible. Nevertheless, plaintiff relied on the same alleged facts, which clearly set forth an alleged breach of a lease agreement by improperly terminating the lease.

Lessees can maintain inverse condemnation claims where a government entity takes property from the lessor and thereby causes a termination of the lease. See *Lookholder v Ziegler*, 354 Mich 28, 35-36; 91 NW2d 834 (1958); *Merkur Steel Supply Inc v City of Detroit*, 261 Mich App 116, 134; 680 NW2d 485 (2004). However, a governmental taking is generally understood to be a total severance of title, leaving intact any leases or contracts. See *AW Duckett & Co v United States*, 226 US 149, 149-152; 45 S Ct 38; 69 L Ed 216 (1924). Here, if defendant "took" any property, it was property that defendant itself owned, and it terminated plaintiff's leasehold interest only. Defendant's letter of termination clearly provides that plaintiff was to remove its merchandise, displays, and non-built-in fixtures. In short, defendant's alleged misconduct simply does not amount to an exercise of eminent domain powers; it amounts to a breach of a contract for the lease of premises. Therefore, had plaintiff argued that dismissal of its Count VII was erroneous, we would disagree.

Conversely, it is axiomatic that a claim for breach of contract does not sound in tort, and plaintiff's breach of contract claim does not appear to be so facially unmaintainable that it should clearly have been dismissed as a matter of law. Therefore, whether Count I of the complaint should be dismissed depends on other considerations.

## V. COURT OF CLAIMS NOTICE PROVISIONS

"In MCL 600.6431(1) [and (2)], the Legislature has qualified a claimant's ability to bring a claim against the state by requiring that 'the claim or notice shall be signed and verified by the claimant before an officer authorized to administer oaths.' " *Fairley*, 497 Mich at 298. In relevant part, the statute provides as follows:

(1) Except as otherwise provided in this section, a claim may not be maintained against this state unless the claimant, within 1 year after the claim has accrued, files in the office of the clerk of the court of claims either a written claim or a written notice of intention to file a claim against this state or any of its departments, commissions, boards, institutions, arms, or agencies.

(2) A claim or notice under subsection (1) must contain all of the following:

(a) A statement of the time when and the place where the claim arose.

> (b) A detailed statement of the nature of the claim and of the items of damage alleged or claimed to have been sustained.
>
> (c) A designation of any department, commission, board, institution, arm, or agency of the state involved in connection with the claim.
>
> (d) A signature and verification by the claimant before an officer authorized to administer oaths.

Furthermore, MCL 600.6434(2) states that "[t]he complaint shall be verified." Failure to comply with the notice verification requirements is "a complete defense in an action against the state or one of its departments." *Fairley*, 497 Mich at 292. Moreover, it is a defense that may be raised at any time, irrespective of whether the defendant has suffered actual prejudice.[4] *Id*. at 292, 298; *ADR Consultants*, 327 Mich App at 75. Thus, the Court of Claims correctly recognized that failure to provide a verified claim or notice serves as a bar to pursuing a claim in the Court of Claims, even if defendant was in fact on notice. See *McCahan v Brennan*, 492 Mich 730, 743; 822 NW2d 747 (2012).

Plaintiff argues that the above verification requirement does not apply because it filed its complaint in circuit court. This argument is slightly off base. This Court has recently held that "the requirements in MCL 600.6431 do not apply to claims properly filed in circuit court." *Tyrrell v Univ of Mich*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 349020), slip op at p 6. However, this Court reaffirmed that plaintiffs remain obligated to comply with MCL 600.6431 when proceeding in the Court of Claims. *Id*. at ___, slip op at pp 7-8. Thus, the bare fact that plaintiff filed its complaint in circuit court is irrelevant to the instant matter. Rather, the dispositive factor is whether plaintiff's remaining claim may actually be maintained in circuit court.

Plaintiff argues that parties remain entitled to proceed in circuit courts as to claims "for which there is a right to a trial by jury as otherwise provided by law." MCL 600.6421(1). However, the question is not whether there would ordinarily be a right to a jury trial as between private parties, but whether there is a specific right to a jury trial *against the state*. No right to any suit against the state, even for breaches of contract, existed at common law; and to the extent any such claims were permitted by grace of the Legislature, they took place in courts of chancery. See *Mich State Bank v Hastings*, 1 Doug 225, 235-237 (1844). A right to a jury trial against the state exists under some particular statutes, such as the whistleblower's protection act or the civil rights act, where the Legislature clearly intended to submit those claims to the circuit court's jurisdiction. See *Anzaldua v Band*, 457 Mich 530, 548; 578 NW2d 306 (1998). Otherwise, the Court of Claims

---

[4] We note that although defendant did not specifically cite to MCL 600.6431(2)(d) in its answers, which might have been more helpful, it did provide plaintiff with prompt notice that verification of its complaints was an issue and at least a reference to MCL 600.6434(2). Thus, whether or not the procedural hurdles in the Court of Claims Act serve any practical purpose if actual prejudice is irrelevant, it is difficult to accuse defendant of engaging in gamesmanship. We further note that there is no question that plaintiff filed its original complaint within one year of when its claims accrued, and therefore this is not a case involving the *timeliness* of notice, but rather the *adequacy* of notice, i.e., whether the verification requirement was met.

has exclusive jurisdiction over claims against the state for money damages. See *Lumley v Bd of Regents for Univ of Mich*, 215 Mich App 125, 133; 544 NW2d 692 (1996). If litigants against the state could avail themselves of jury trials merely because they have a right to a jury trial against any other kind of party, the exception would swallow the rule. See *Barbour v Dep't of Social Services*, 172 Mich App 275, 279-280; 431 NW2d 482 (1988). Thus, the Court of Claims has exclusive jurisdiction over plaintiff's breach of contract claim seeking money damages. See *Chen v Wayne State Univ*, 284 Mich App 172, 197-198; 771 NW2d 820 (2009).

There appears to be no real dispute that neither of plaintiff's complaints were themselves verified within the meaning of MCL 600.6431 or MCL 600.6434. Plaintiff argues that it satisfied the verification requirement with an affidavit from Zaid Elia, plaintiff's managing member, which was filed with plaintiff's November 2018 response to defendant's first motion for summary disposition. The Court of Claims acknowledged that the affidavit was signed and verified before an officer authorized to administer oaths. It did not otherwise substantively analyze whether it satisfied the requirements of MCL 600.6431(2) because it found the affidavit to be untimely, neither a "written notice of intention to file a claim" or a "written claim," and not filed in the Court of Claims; therefore, it concluded that the affidavit could not save plaintiff's action from dismissal.

After the Court of Claims entered its dismissal of this matter, our Supreme Court clarified that a complaint that has not been verified pursuant to MCL 600.6431 or MCL 600.6434 is not a nullity and is not ineffective to commence an action. *Progress Michigan v Attorney General*, ___ Mich ___, ___; ___ NW2d ___ (2020) (Docket No. 158150), slip op at p 18. Plaintiffs are not excused from complying with the verification requirement. *Id*. at ___, slip op at pp 10, 18-19. However, plaintiffs may simply amend an unverified complaint. *Id*. at ___, slip op at pp 15-16, 18-19. Doing so may be considered a mere correction of a technical defect. See *id*. at ___ n 18, slip op at pp 19-20 n 18. Thus, to the extent the Court of Claims concluded that plaintiff was precluded from achieving compliance with MCL 600.6431 at any later time in the proceedings, that conclusion is no longer "good law."

We conclude that plaintiff must comply with the verification requirements of MCL 600.6431 and MCL 600.6434. However, plaintiff may correct any defect in complying with those requirements during the pendency of the proceedings and in accordance with the court rules. Clearly, if plaintiff cannot provide proper verification, plaintiff's claim must be dismissed. However, plaintiff may cure a defect in that verification during the proceedings. Therefore, to the extent the Court of Claims dismissed plaintiff's breach of contract claim on the grounds that it was too late for plaintiff to provide proper verification, that dismissal must be reversed. We decline to consider whether the affidavit would be sufficient to bring plaintiff into compliance. We also decline to consider any of the substantive merits of plaintiff's remaining breach of contract claim. Such issues are better addressed by the Court of Claims in the first instance.

## VI. CONCLUSION

The Court of Claims's dismissal of plaintiff's claim for breach of contract is reversed and remanded for further proceedings. Those proceedings shall include providing plaintiff with an opportunity to correct any defects in its compliance with the verification requirements in MCL 600.6431 and MCL 600.6434, if the Court of Claims determines that the affidavit is insufficient to bring plaintiff into compliance. In all other respects, dismissal of the remainder of plaintiff's

-9-

claims is affirmed.  We do not retain jurisdiction.  The parties shall bear their own costs, neither party having prevailed in full.  MCR 7.219(A).

/s/ Amy Ronayne Krause
/s/ Brock A. Swartzle
/s/ Michelle M. Rick